# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:18-cv-1756-ACA** |
| | } | |
| **MICHAEL DUDLEY,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION AND ORDER

In this case, the United States seeks to collect a $15,000 administrative penalty that the Federal Communications Commission ("FCC") imposed against *pro se* Defendant Michael Dudley for allegedly operating unlicensed radio stations on 103.9 MHz and 107.9 MHz, in violation of 47 U.S.C. § 301.

The United States has moved for judgment on the pleadings, under Federal Rule of Civil Procedure 12(c).  (Doc. 41).

Based on the substance the pleadings, no material facts are in dispute with respect to Mr. Dudley's willful operation of an unlicensed radio station on 103.9 MHz or with respect to Mr. Dudley's affirmative defense challenging FCC rules or orders.  Therefore, the court **GRANTS** the United States' motion as to Mr.

Dudley's liability for operation of an unlicensed radio station on 103.9 and as to Mr. Dudley's affirmative defense.

The court withholds entering a final judgment as to a corresponding civil forfeiture penalty at this juncture for two reasons. First, the United States' amended complaint contemplates that the $15,000 forfeiture amount accounts for Mr. Dudley's alleged illegal operation of a radio station on 107.9 MHz, conduct that Mr. Dudley denies. Second, the court will permit the parties an opportunity to submit evidence on the factors that the court may consider when determining the appropriateness of the forfeiture amount pursuant to § 503(b)(2) of the Communications Act.

## I.   BACKGROUND

In reviewing a Rule 12(c) motion for judgment on the pleadings, the court accepts "as true all material facts alleged in the non-moving party's pleading" and views "those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).[1]   But the

---

[1] The court may also consider documents outside the pleadings if "they are central to the claim at issue and their authenticity is undisputed." *Perez*, 774 F.3d at 1340 n.12. The United States attached to its motion for judgment on the pleadings three exhibits: (1) the FCC's notice of apparent liability for forfeiture; (2) the FCC's forfeiture order; and (3) a copy of the transcript from a January 27, 2020 status conference in this matter. (Docs. 41-1, 41-2, and 41-3). Because those documents are not necessary to resolve the motion for judgment on the pleadings as to Mr. Dudley's liability for operating an unlicensed radio station on the 103.9 frequency, the court does not consider them.

court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In 2015, Mr. Dudley "broke the law and began broadcasting on the 103.9 frequency" without a license. (Doc. 13 at 1; *see* Doc. 13 at 2 ("I admit that I am guilty of breaking the law by operating without a license on the 103.9 FM frequency.")). In April or May 2016, the FCC notified Mr. Dudley that he was breaking the law, and an FCC agent left a Notice of Unauthorized Operation ("NOUO") at Mr. Dudley's residence that instructed Mr. Dudley to stop operating the radio station on 103.9 MHz and warned him that continued unlicensed operation could result in additional enforcement action. (Doc. 12 at ¶ 9; Doc. 13 at 1). According to Mr. Dudley, the FCC agent told him that he "had 10 days to stop broadcasting." (Doc. 13 at 1). Mr. Dudley turned off his transmitter within that 10-day period and mailed the transmitter to Atlanta, Georgia "so the FCC could destroy it." (*Id.*).

Soon after, "another party began operating a transmitter on the 107.9 FM frequency from a location within 5 miles of" Mr. Dudley's house. (*Id.*). The FCC called Mr. Dudley to "question [him] about this transmitter." (Doc. 13 at 1). Mr. Dudley told the agent he "was aware of it and knew who was operating

it," but Mr. Dudley had "no control over it and the matter was out of [his] hands." (*Id.* at 2).

In July 2016, FCC agents left another handwritten NOUO under Mr. Dudley's door that directed Mr. Dudley to stop operating the ration station on 107.9 MHz and warned him that continued operation could result in additional enforcement action. (Doc. 12 at 5, ¶ 11[2]). Mr. Dudley claims that the FCC does not have physical evidence that he was operating a transmitter on the 107.9 frequency. (Doc. 13 at 2).

In October 2016, the FCC Enforcement Bureau issued a Notice of Apparent Liability for Forfeiture ("NAL") to Mr. Dudley for a monetary forfeiture of $15,000 as a result of alleged "willful and repeated unlicensed operation of an FM radio station," in violation of § 301 of the Communications Act. (Doc. 12 at 6, ¶ 11; *see id.* at 5, ¶ 12). The NAL ordered Mr. Dudley to pay the full amount of the proposed forfeiture, or to file a written statement seeking a reduction or cancellation of the forfeiture, within 30 days. (Doc. 12 at 6, ¶ 11). Mr. Dudley responded to the NAL stating that the station had been shut down and that he was unable to pay the fine. (Doc. 12 at 6, ¶ 12). In

---

[2] The amended complaint contains two paragraphs 11 and 12. (Doc. 12 at 5, ¶¶ 11, 12; Doc. 12 at 6, ¶¶ 11, 12). The court uses the page number in this citation, and others where necessary, for clarity to distinguish paragraphs 11 and 12 on page 6 from paragraphs 11 and 12 on page 5.

October 2017, the FCC issued a forfeiture order in the amount of $15,000 against Mr. Dudley.  (Doc. 12 at ¶ 13).

Because Mr. Dudley failed to pay the forfeiture penalty, the United States filed this action pursuant to § 504(a) of the Communications Act, seeking to enforce and collect the $15,000 forfeiture order.  (Doc. 12).

## III.   DISCUSSION

Pursuant to Federal Rule of Civil Procedure 12, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."   Fed. R. Civ. P. 12(c).   "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts."  *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

The United States seeks judgment on the pleadings with respect to Mr. Dudley's alleged willful and repeated operation of an unlicensed radio station on the 103.9 frequency, in violation of the Communications Act and with respect to the corresponding civil forfeiture penalty from the FCC.  (Doc. 41 at 13–16).  The United States also moves for judgment on the pleadings as to Mr. Dudley's affirmative defense regarding the validity of FCC orders concerning

application windows for low-power FM licenses.  (Doc. 41 at 17–18; *see also* Doc. 13 at 1).  In his response to the United States' motion for judgment on the pleadings, Mr. Dudley does not deny liability, nor does he argue that judgment on the pleadings is improper.  (Doc. 43).  He asks that when assessing the forfeiture amount, the court "make the penalty proportionate to the crime" and consider that he is "a poor man" with "no valuable assets."  (*Id.*).

Under the Communications Act, the FCC has exclusive authority to license the use of broadcasting frequencies for radio and television stations.  *In re Beach Television Partners*, 38 F.3d 535, 536 (11th Cir. 1994) (citing 47 U.S.C. § 307).  Section 301 of the Act provides that "[n]o person shall use or operate any apparatus for the transmission of energy or communications or signals by radio" from one place in any state to another place in the same state without a license from the FCC.  47 U.S.C. § 301.  The FCC may issue monetary forfeiture penalties against any person who "willfully or repeatedly" violates the Act.  47 U.S.C. § 503(b).  For purposes of the Act, a willful violation requires only "the conscious and deliberate commission or omission of" an act "irrespective of any intent to violate" the statute.  47 U.S.C § 312(f)(1).

Mr. Dudley's admission in his answer that he operated an unlicensed radio station on the 103.9 frequency establishes that he willfully violated the Communications Act. Therefore, the United States is entitled to judgment on the pleadings as to liability for a willful violation of § 301 of the Communications Act.[3]

The United States also is entitled to judgment on the pleadings with respect to Mr. Dudley's defense that the FCC forced him to break the law by refusing to issue a low power license. In his answer to the amended complaint, Mr. Dudley asserts that "the FCC has been in violation of several statutes" by not issuing him a non-profit lower power radio station license. (Doc. 13 at 1). To the extent Mr. Dudley is challenging the validity of the FCC's orders or regulations concerning applications for non-profit, lower power FM licenses, the court does not have jurisdiction to hear those arguments. Rather, Mr. Dudley must raise such a challenge with the Court of Appeals. *Self v. Bellsouth Mobility, Inc.*, 700 F.3d 453, 461 (11th Cir. 2012) ("[T]he courts of appeals have exclusive jurisdiction over claims to enjoin, suspend, or invalidate a final order of the FCC."); *see United States. v. Any & All Radio Station Transmission*

---

[3] The United States also argues that the pleadings establish that Mr. Dudley repeatedly violated the Act. (Doc. 41 at 15). The court need not consider this issue because the Act allows for forfeiture penalties for willful *or* repeated violations. *See* 47 U.S.C. § 503(b). And as explained above, based on the pleadings, there is no material dispute that Mr. Dudley willfully violated the statute.

*Equip.*, 207 F.3d 458, 463 (8th Cir. 2000) (in a forfeiture action against a broadcaster without a license, the district court had no jurisdiction to determine validity of FCC rule because Courts of Appeals have exclusive jurisdiction over rulemaking by the FCC).[4]   Accordingly, the United States is entitled to judgment on the pleadings with respect to any purported affirmative defense challenging FCC regulations or orders.

## III.   CONCLUSION

The court **GRANTS** the United States' motion for judgment on the pleadings as to Mr. Dudley's liability for operation of an unlicensed radio station on 103.9 and as to Mr. Dudley's affirmative defense.  (Doc. 41).

However, the court cannot determine whether the $15,000 forfeiture is proper at this juncture.  The court's review of the appropriateness of a forfeiture order is *de novo*.  47 U.SC. § 504(a).  This means that the "the court should make an independent determination of the issues."  *United States v. First City Nat. Bank of Houston*, 386 U.S. 361, 368 (1967); *see also United States v. Daniels*, 418 F. Supp. 1074, 1080–81 (D.S.D. 1976) ("The broad powers of judicial review granted in [§ 504 of the Communications Act] necessarily include the power to review . . . the amount of any forfeiture imposed.").

---

[4] Mr. Dudley's response to the United States' motion for judgment on the pleadings acknowledges that he "will leave the fight to get the FCC to obey the law that Congress passed up to someone else."  (Doc. 43).

The base forfeiture amount for an unlicensed operation of a radio station by a member of the public is $10,000.  *See* 47 C.F.R. § 1.80, Section 1.  The court may adjust the penalty upward or downward based on a number of factors, including "the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require."  47 U.S.C. § 503(b)(2)(E).

The amended complaint states that the FCC imposed a $15,000 penalty and contemplates that the fine accounts for Mr. Dudley's operation of unlicensed radio stations on both the 103.9 frequency and the 107.9 frequency. (Doc. 12 at  ¶¶ 9–14).  On the face of the pleadings, there are genuine disputes of fact about whether Mr. Dudley operated an unlicensed radio station on the 107.9 frequency.  (*Compare* doc. 12 at ¶ 11 *with* doc. 13 at 2).  In addition, the court wishes to examine evidence that the parties may present regarding the factors the court can consider when determining whether to adjust the fine upward or downward.  *See* 47 U.S.C. § 503(b)(2)(E).

Accordingly, the court **CANCELS** the bench trial set for October 29, 2020 and all corresponding pre-trial deadlines.

The court **SETS** an evidentiary hearing at **10:00 a.m.** on **August 20, 2020** in Courtroom 6B, 1729 Hugo Black U.S. Courthouse, 1729 5th Ave. N., Birmingham, AL 35209.

The court **SETS** a pre-hearing telephone conference for **10:00 a.m.** on **August 13, 2020**.  Counsel for the United States and Mr. Dudley **SHALL** dial 888-363-4734 and enter access code 9659451 to participate in the call.

The court **DIRECTS** the Clerk to send a copy of this order to Mr. Dudley.

**DONE** and **ORDERED** this July 27, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE